UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE


CIVIL ACTION NO. 04-CV-299-KKC

ANTONIO MEODAR                                                           PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA                                         DEFENDANT

\* \* \* \* \*

This matter is before the Court on Defendant's motion to dismiss or, in the alternative,

motion for summary judgment [Record No. 30]. In response to the Court's August 1, 2005 Show

Cause Order [Record No. 31], the *pro se* plaintiff filed a "Motion to Reinstatement, Rehearing"

[Record No. 32]. The Court will construe this filing as a response to Defendant's motion to dismiss.

The Court notes that the defendant has failed to file a reply and the time for such filing has expired.

Accordingly, the instant motion is ripe for decision.

**BACKGROUND**

Plaintiff Meodar, a federal prisoner, was being transferred from the United States

Penitentiary, Atlanta, Georgia (U.S.P. Atlanta) to the United States Penitentiary, Big Sandy,

Kentucky (U.S.P. Big Sandy). This transport took place on January 15, 2004. Plaintiff alleges that

on January 15, 2004, as he was exiting the Bureau of Prisons' prisoner transport bus, while secured

with leg irons and handcuffs, his leg irons became entangled in the bus' platform step. According

to his complaint, Plaintiff Meodar fell from the bus platform and struck the ground, allegedly

suffering subsequent pain to the neck, left shoulder, and upper back. Plaintiff claims that his fall,

1

and the injuries incurred therefrom, were caused by the government's negligence relating to the faulty or malfunctioning bus platform.

Plaintiff's second claim relates to the allegedly negligent medical care he received in the months following his fall from the bus platform. After his fall on January 15, 2004, Plaintiff was immediately assisted by staff, and he indicated he was okay. (Declaration of Ulises Vargas, ¶ 5). At this time, one of the Inmate Systems Department staff members notified the Lieutenant on duty regarding Plaintiff's fall. *Id.* Additionally, medical staff were notified and responded to the Receiving and Discharge Department upon Plaintiff's arrival to that area. *Id.* at ¶ 6. Approximately one hour after the fall, Plaintiff was evaluated by a mid-level practitioner regarding any potential injuries he may have sustained. *Id.* at ¶ 7. During this evaluation, the practitioner noted no signs of skin breaks or bleeding, and aseptic procedures were performed. *Id.* at ¶ 8. Plaintiff was instructed to follow up with the Medical Department at sick call if he had any further problems; he verbalized his understanding of this instruction. *Id.* at ¶¶ 8-9. Plaintiff was prescribed Tylenol for pain. *Id.* at ¶ 9.

On January 16, 2004, Plaintiff received his medical intake screening. [Record No. 1, medical records attached to Plaintiff's Complaint]. The medical record indicates that Plaintiff suffered no present medical complaints at that time. *Id.* On January 21, 2004, an Admission and Orientation physical examination was performed, and Plaintiff provided no history of any recent injuries. (Dec. of Vargas, ¶ 10). He did, however, state that he had been involved in a motor vehicle accident in 1996 where he suffered left shoulder trauma. *Id.* at ¶ 11. Plaintiff reported to sick call on January 26, 2004, complaining of pain in his neck, left shoulder, and lower back. *Id.* at ¶ 12. A medical examination revealed a full range of motion in Plaintiff's shoulders, and his neuro-vascular motion

was intact.  *Id.* at ¶ 13.  X-rays of Plaintiff's cervical and thoracic spine were ordered, and he was prescribed Motrin for pain.  *Id.* at ¶ 14.

On February 6, 2004, Plaintiff again reported to sick call, complaining of neck and upper shoulder pain.  *Id.* at ¶ 15.  An examination revealed that Plaintiff had a full range of motion in his upper left arm, elbow and wrist.  *Id.*  He was prescribed a refill of Motrin for pain.  *Id.*  He was seen again on February 27, 2004, when he reported to sick call complaining of pain in his neck, left shoulder, and upper back.  *Id.* at ¶ 16.  No bruising, swelling or deformity was noted in any of the areas about which Plaintiff complained.  *Id.*  His x-rays were reviewed, and revealed no evidence of injuries.  *Id.* at ¶ 17.  Plaintiff was prescribed Motrin, and he verbalized an understanding that there was no medical evidence of any injuries.  *Id.*

On March 4, 2004, Plaintiff was counseled by a mid-level practitioner regarding his medical condition.  *Id.* at ¶ 18.  The practitioner explained in detail the medications he was being prescribed, as well as the results of his x-rays.  *Id.*  Again, it was expressed to Plaintiff that there was no radiographic evidence of injury.  *Id.*  He was provided a thorough medical review, and verbalized an understanding of his current treatment plan.  *Id.* at ¶ 19.

Plaintiff reported to sick call on March 11, 2004, requesting a bottom bunk permit.  *Id.* at ¶ 20.  His request was denied due to lack of clinical evidence.  *Id.*  He was again seen in sick call on April 6, 2004, complaining of body and bone discomfort, and neck and back pain.  *Id.* at ¶ 21.  His physical examination was normal, and he was prescribed Naprosyn for pain.  *Id.* at ¶¶ 21-22.  At his request, Plaintiff was prescribed a refill of Naprosyn on April 20, 2004.  On July 6, 2004, Plaintiff was seen for an apparent head injury. [Record No. 16, medical records attached to Plaintiff's Motion to Amend Complaint].  There is no mention in these records of any back, neck or shoulder pain.  *Id.*

Pursuant to the administrative settlement procedures under the Federal Tort Claims Act, 28 U.S.C. §2672, *et. seq.*, and the authority granted under 28 C.F.R. §0.172, Meodar filed an administrative tort claim with the Federal Bureau of Prisons ("BOP"). The administrative tort claim was received by the BOP on March 15, 2004. Meodar sought $99,999,999.00 in damages against the United States, arguing negligence regarding the bus's platform as well as negligent medical care. The BOP denied Meodar's administrative claim on June 28, 2004. (Declaration of Kevin Walasinski, ¶¶ 8-13). Meodar filed suit against the U.S. on August 19, 2004, seeking unspecified damages. [Record No. 1].

On January 6, 2005, this Court dismissed Plaintiff's construed Eighth Amendment *Bivens* claim for failure to exhaust his remedies. [Record No. 9]. The Court then ordered the United States to respond to Plaintiff's remaining claims and advise the Court of any regulations or policies controlling the "design and/or installation of bus platforms on vehicles used to transport federal inmates...." *Id.*

**STANDARD OF REVIEW**

A district court may dismiss a suit pursuant to Rule 12(b)(6) if the plaintiff fails to state a claim for which relief may be granted. *See Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 205 F.3d 906, 909 (6th Cir. 2000). A complaint should only be dismissed when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). While "[a]ll factual allegations are deemed true and any ambiguities must be resolved in plaintiff's favor," *Persian Galleries Inc. v. Transcontinental Ins. Co.,* 38 F.3d 253, 258 (6th Cir. 1994), the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Gahafer v. Ford Motor Co.,* 328 F.3d 859, 861 (6th Cir. 2003)

(quoting *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987)).   Also, while a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests" *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir. 1990) (quoting *Conley,* 355 U.S. at 47), the plaintiff must assert more than bare legal conclusions.  *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988)).  "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'"  *Scheid,* 859 F.2d at 436 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984).  A complaint filed by a *pro se* plaintiff is held to even less stringent standards than a complaint drafted by a lawyer.  *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

When matters outside the pleading are presented in support of a motion to dismiss, and are not excluded by the court, the motion is properly construed as a motion for summary judgment and disposed of as provided in Fed.R.Civ.P. 56.  *See* Fed.R.Civ.P. 12(b); *Flint v. Kentucky Dep't of Corr.,* 270 F.3d 340, 348 (6th Cir. 2001).  Federal Rule of Civil Procedure 56(c) provides that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Which facts are material is determined by the substantive law governing the case; only those facts that might affect the outcome of the suit will be considered material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.*

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate

5

the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).  If the  movant establishes a *prima facie* basis for summary judgment, the

nonmovant must produce evidence establishing the existence of a factual dispute that a reasonable

jury could resolve in his favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986).  The nonmoving party may not rest upon mere allegations or denials but must set forth

specific facts showing the existence of a material issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477

U.S. at 256-57.  Moreover, where the nonmovant "fails to make a showing sufficient to establish the

existence of an element essential to that party's case," summary judgment is appropriate.  *Celotex*,

477 U.S. at 322.  Because the Court is taking into account affidavits and other exhibits outside the

original pleading, the Court will construe Defendant's motion as a motion for summary judgment

and apply the standard of review set forth in Fed.R.Civ.P. 56.

## DISCUSSION

Under traditional principles of sovereign immunity, the United States is immune from suit

except to the extent the government has waived its immunity. In 1946, Congress adopted the Federal

Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b), 2671 *et seq.* which, subject to numerous

exceptions,  waives the sovereign immunity of the federal government and confers subject matter

jurisdiction on the federal district courts to hear tort actions against the federal government for

negligence of its employees.  28 U.S.C. §1346(b)(1).  In relevant part, the FTCA, 28 U.S.C.

§1346(b)(1), authorizes suits against the government to recover damages

> for injury or loss of property, or personal injury or death caused by the negligent or
> wrongful act or omission of any employee of the Government while acting within the
> scope of this office or employment, under circumstances where the United States, if
> a private person, would be liable to the claimant in accordance with the law of the
> place where the act or omission occurred.

28 U.S.C. §1346(b)(1).  A significant limitation of the waiver of immunity provided by the Act is the exception known as the DFE, the discretionary function exception, 28 U.S.C. §2680(a), which provides that Congress' authorization to sue the United States for damages

> shall not apply to ... [a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the party of ... an employee of the Government whether or not the discretion involved be abused.

28 U.S.C. §2680(a).

The United States Supreme Court has prescribed a two-part test for determining the applicability of the DFE.  *See United States v. Gaubert,* 499 U.S. 315, 322-25 (1991); *Berkovitz v. United States,* 486 U.S. 531, 536-37 (1988).  According to the *Gaubert-Berkovitz* test, the DFE bars suits only if two conditions are met:  (1) the acts alleged to be negligent must be discretionary, in that they involve an "element of judgment or choice" and are not compelled by statute or regulation, and (2) the judgment or choice in question must be grounded in "considerations of public policy" or be susceptible to policy analysis.  *See Gaubert,* 499 U.S. at 322-23; *Berkovitz,* 486 U.S. at 536-37.  It is the government's burden to demonstrate the applicability of the discretionary function exception. *Whisnant v. United States,* 400 F.3d 1177, 1181 (9th Cir. 2005) (citing *Bear Medicine v. United States ex rel. Sec'y of the Dep't of the Interior,* 241 F.3d 1208, 1213 (9th Cir. 2001)).

### I.    FTCA Claim Relating to the Bus Platform

As stated above, on January 6, 2005, the Court ordered the United States to advise the Court of any regulations or policies controlling the "design and/or installation of bus platforms on vehicles used to transport federal inmates...." [Record No. 9].  Complying with said Order, in its memorandum in support of its motion to dismiss, or in the alternative, motion for summary judgment, the United States advises

> U.S.P. Atlanta currently operates four MCI buses, two being built in 1996, one in
> 2001, and one in 2002.  The buses used by the Bureau of Prisons are purchased from
> vendors such as MCI.  MCI will bid on a contract from the BOP, and the BOP will
> request vehicle orders with standard equipment from MCI, which include platforms
> on the bus before the bus is delivered to the BOP.  On January 15, 2004, there were
> no specific and/or mandatory regulations or policies in effect that related to the bus
> platforms.

[Record No. 30, internal citations omitted].

In the instant case, application of the first prong of the two-prong test for determining the

applicability of the discretionary function exception is straightforward.  No statute, policy, or

regulation prescribed the design and/or installation of bus platforms on vehicles used to transport

federal inmates.  There is substantial authority for the proposition that the *absence* of policies or

regulations vests a federal agency with judgment and discretion, resulting in satisfaction of the first

prong of the test.  *See Berkovitz,* 486 U.S. at 536; *Gaubert,* 499 U.S. at 322; *Rosebush v. United*

*States,* 119 F.3d 438, 442 (6th Cir. 1997); *Jackson v. United States,* 24 F. Supp. 2d 823, 830 (W.D.

Tenn. 1998).   Accordingly, the Court concludes that in the instant action, the *absence* of specific

policies or regulations relating to the design, installation, selection, and/or maintenance of the bus

platforms on vehicles used to transport federal inmates clearly vests the BOP with "an element of

judgment or choice" as it relates to said platforms.  *Gaubert,* 499 U.S. 322 (1991) (quotation marks

omitted).  Thus, the first prong of the DFE analysis is satisfied.

Having determined that the BOP's action was discretionary, the Court must next determine

if the BOP's conduct in the design, installation, selection, and/or maintenance of the bus platforms

on vehicles used to transport federal inmates was of the type that Congress intended the DFE to

protect.  In the Court's January 6, 2005 Order, the Court stated that the facts of the instant matter are

ambiguous as to whether the complained-of conduct relating to the bus platform falls within the

DFE.  Consequently, the Court required the United States to respond to this aspect of Plaintiff's

8

complaint. Other than the brief discussion relating to the first prong of the *Gaubert-Berkovitz* test, as quoted in its entirety above, the United States failed to elucidate any of the ambiguities present herein. As it is the government's burden to demonstrate the applicability of the DFE, the Court declines to grant summary judgment on this issue at this time.

## II.     FTCA Claim Relating to Medical Negligence

Plaintiff's second claim relates to the allegedly negligent medical care he received in the months following his fall from the bus platform. Because the United States may be held liable only if the conduct complained of amounts to negligence "in accordance with the law of the place where the act or omission occurred," 28 U.S.C. §1346(b), liability under the FTCA is governed by state law. *Rayonier Inc. v. United States,* 352 U.S. 315, 318 (1957). For a plaintiff to establish a cause of action for common law negligence in Kentucky, he must prove the following elements: (1) duty; (2) breach of duty; (3) proximate causation; and (4) actual injury. *Grubbs ex rel. Grubbs v. Barbourville Family Health Center, P.S.C.,* 120 S.W.3d 682, 693-94 (Ky. 2003). Specifically, "[i]n medical malpractice cases the plaintiff must prove that the treatment given was below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused injury or death." *Reams v. Stutler,* 642 S.W.2d 586, 588 (Ky. 1982) (citing *Blair v. Eblen,* 461 S.W.2d 370 (Ky. 1970)).

The duty of a physician is to "use that degree of care and skill which is expected of a reasonably competent practitioner in the same class to which he belongs, acting in the same or similar circumstances." *Blair v. Eblen,* 461 S.W.2d 370, 373 (Ky. 1970). Further, as to causation, Kentucky law requires a showing that the alleged negligent act(s) proximately caused the injury claimed by the Plaintiff; "the bare possibility of causation will not suffice." *Reams,* 642 S.W.2d at 588. In matters of causation and proximate cause, Kentucky employs the substantial factor test.

*Deutsch v. Shein,* 597 S.W.2d 141 (Ky. 1980).  In *Deutsch*, the Court, defined "substantial factor" as follows:

> In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent.  (T)his is necessary, but it is not of itself sufficient.  The negligence must also be a substantial factor in bringing about the plaintiff's harm.  The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred.  Each of these events is a cause in the so-called 'philosophic sense,' yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

*Deutsch,* 597 S.W.2d at 144 (quoting Restatement (Second) of Torts §431 cmt. a (1965)).

Under Kentucky law, a plaintiff alleging medical malpractice is generally required to prove both the existence of malpractice and causation with expert testimony.  *Vance v. United States,* 90 F.3d 1145, 1148 (6th Cir. 1996).  The only exception to this is if negligence is so apparent that laymen with general knowledge would have no difficulty in recognizing it or inferring it from the facts.  *Jarobe v. Harting,* 397 S.W.2d 775, 778 (Ky. 1965).  It is generally accepted "that the necessary expert testimony may be supplied by the defendant's admissions during discovery, or through medical evidence obtained from other treating physicians." *Vance,* 90 F.3d at 1148 (citing *Perkins v. Hausladen,* 828 S.W.2d 652, 655-56 (Ky. 1992)).

Meodar's complaint and exhibits indicate that he received medical attention and treatment immediately following his fall from the bus platform and on a regular basis thereafter.  Plaintiff's medical records demonstrate that the injuries of which he complains were addressed through multiple medical examinations, evaluations, x-rays, treatments, and medications administered to him on an ongoing basis since January 15, 2004.  Moreover, Ulises Vargas, Health Services Administrator at U.S.P. Big Sandy, stated in his affidavit that Meodar received "thorough and

10

appropriate medical treatment consistent with community standards." (Dec. of Vargas, ¶ 23). Meodar has failed to present or allege the existence of any expert testimony which would establish that the medical treatment he received was substandard. Accordingly, the Court finds there is no genuine issue of material fact, with respect to Plaintiff's medical negligence claim, such that a reasonable jury could return a verdict for the plaintiff.

**CONCLUSION**

Accordingly, for the reasons discussed above, **IT IS ORDERED**:

(1) That Defendant's motion to dismiss, or in the alternative, motion for summary judgment [Record No. 30] be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART**.

(2) That Plaintiff's FTCA claim of alleged negligence relating to the bus platform remains pending.

(3) That the Clerk of the Court shall re-docket Plaintiff's "Motion to Reinstatement, Rehearing" [Record No. 32] as a response to Defendant's motion to dismiss, or in the alternative, motion for summary judgment [Record No. 30], and the same shall relate back to the original filing date.

Dated this 27th day of October, 2005.

**Signed By:**

*Karen K. Caldwell*

**United States District Judge**

11
